Heinz Binder (SBN 87908)
Robert G. Harris (SBN 124678)
Julie Rome-Banks (SBN 142364)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermalter.com

Attorneys for debtor and debtor-in-possession
ET Solar, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ET SOLAR, INC., <br><br> Debtor, | Case No. 17-43031 CN <br> Chapter 11 <br><br> Date: May 24, 2018 <br> Time: 10:00 a.m. <br> Place: Courtroom 215 <br>        1300 Clay Street <br>        Oakland, California |

**MOTION TO APPROVE SALE OF CONSIGNMENT INVENTORY
FREE AND CLEAR OF LIENS AT AUCTION
(11 U.S.C. §§363(b)(1), 363(f)(2), 363 (f)(3), 363(f)(4), 363(f)(5))**

TO NC STATE RENEWABLES, LLC, CD GLOBAL SOLAR NC INVESTOR, L.P., VEECO HOLDINGS LLC, AND CLG, INC./COASTAL LOGISTICS GROUP, INC., AND HOPEWAY LOGISTICS CO.

Debtor and debtor-in-possession ET Solar, Inc. (the "Debtor") hereby moves the Court for an order approving its sale of its inventory received on consignment by auction; the inventory is listed in Exhibit "A" (the "Inventory"[1]). The Debtor seeks as relief (1) approval of the sale of the Inventory at an auction to be conducted after appropriate appointment and marketing by auctioneer

---

[1] The Inventory is also referred to as the "Cargo".

Heritage Global Partners Inc. ("Heritage"), free and clear of all liens, claims and encumbrances, (2) authorization for the Debtor to pay the costs of Heritage in connection with said auction, as well as the commission resulting therefrom following the filing of a report detailing the results of said auction pursuant to FRBP 6004(f)(1); and, (3) to the transfer of any liens and interests, if any, by CapDyn (defined below), Veeco Holdings LLC, CLG, Inc. (also known as Coastal Logistics Group, Inc.) and NC State Renewables, LLC ("NC State Renewables") as to the remaining proceeds of the sale of Inventory after payment of the costs and commission of the auction of the Inventory and release upon satisfactory proof of secured status.

The Debtor respectfully represents as follows in support of this Motion:

1. The Debtor is in the business of selling and marketing of photovoltaic solar modules for commercial and industrial customers. The Debtor is located in Pleasanton, California and has been in operation since 2007. The Debtor elected to seek protection in Chapter 11 on December 4, 2017. It now has five employees.

2. In January 2016, the Debtor had entered into a contract with CD Global Solar Investor, L.P., also known as Capital Dynamics or "CapDyn" for sale of a large number of solar modules to be used at various solar farm locations. A dispute ensued between the parties when the Debtor was unable to deliver all of the pre-paid solar modules ordered. The International Center for Dispute Resolution issued a pre-petition arbitration award on October 27, 2017 against the Debtor in which the Debtor was, "enjoined from transferring, assigning or selling the Undelivered Modules to any third party, or creating or renewing in any third party any security interest or right to possession or control that is inconsistent with the ability of [CapDyn] to take possession of the Undelivered Modules."

3. In October 2016, Hopeway Logistics Co. ("Hopeway") carried cargo under two non-negotiable bills of lading from Qingdong, China to Norfolk, Virginia. The cargo consisted of 66 and 88 (i.e. a total of 154) packages respectively of certain solar modules (the "Cargo") which the Debtor had ordered from manufacturer ET Solar Energy of Hong Kong. The Cargo represents a portion of the solar modules which CapDyn had ordered from the Debtor and which were the subject of the arbitration described above. The Cargo arrived without incident at the end of 2016

and was valued at $586,485.90 upon entry. The Debtor believed at the time the Cargo was delivered that Hopeway would not release the Cargo to the Debtor due to the Debtor's inability to produce original Bills of Lading. The Debtor similarly believed on the Petition Date that the Cargo did not constitute the Debtor's inventory. The Debtor is concurrently amending its Schedule A/B to include the Cargo as additional inventory of the Bankruptcy Estate with a value of $414,414.00. As a result, on November 9, 2017, the Debtor issued a "Letter of Guarantee" to Hopeway and Shanghai Eternal Internal Freight Forwarding Co., Ltd, Hopeway's China Agent identified on the bills of lading, stating that the Debtor could not take delivery of the Cargo because it was unable to present the original bills of lading. This Letter of Guarantee requested Hopeway to de-van the containers at the Debtor's cost, to prevent costs associated with container detention and terminal storage. Concurrent with the Letter of Guarantee, the Debtor entered into a Three Parties Agreement on Warehousing of the Cargo with Hopeway and Veeco Holdings LLC ("Veeco") whereby Veeco agreed to take custody of the Cargo and store the Cargo in a warehouse located at CLG, 6701 College Drive, Suite 100, Suffolk, Virginia. Veeco agreed to charge storage to the Debtor only at the rate of $7.50 per pallet per month; Hopeway has no obligation to pay the storage and the Cargo would only be released upon written notice from Hopeway.

   4. In early April 2018, counsel for Hopeway brought the matter to the attention of counsel for the Debtor, advising that the Debtor's refusal to take delivery in November 2017 had been in error because the original bills of lading in fact were not required. As Debtor is actually a consignee of the Cargo, Hopeway takes the position that the Debtor is entitled to take delivery under a non-negotiable bills of lading upon showing proper identification to the carrier, Hopeway. Hopeway's counsel advises that Hopeway consents to the release of the Cargo. It is Hopeway's position that the Debtor is the "only party to whom Hopeway may legally allow release of the Cargo."

   5. Given that the Cargo creates a continued expense of storage, the Debtor is prepared to employ an auctioneer to assist with the sale of the Cargo. That auctioneer, Heritage Global Partners Inc. ("Heritage"), will conduct the sale within a period of 3 weeks from approval of its employment in order to allow sufficient time for Heritage to advertise the Cargo to prospective

bidders. The Debtor negotiated as compensation for Heritage a 10% commission on proceeds plus an auction allowance (or cost retainer) of $10,000.

6. The Debtor believes that a properly advertised and conducted auction is likely to generate in excess of $400,000 for the Cargo.

7. NC State Renewables holds a continuing lien against all of the Debtor's assets. NC State Renewables will consent to the sale of the Cargo.

8. CapDyn asserts that the decision of the International Center for Dispute Resolution created an interest in the Cargo on the part of CapDyn. The Debtor disputes this assertion and believes that it can sell free and clear of CapDyn's interest, if any, in the Cargo, with that interest attaching to the proceeds, pursuant to 11 U.S.C. §363(f)(4). Discussions are underway with CapDyn for a complete resolution of said interest, of CapDyn's claims. The Debtor agrees that, absent a settlement, CapDyn is entitled to assert a claim for adequate protection under 11 U.S.C. §363(f)(4) which is not intended to be circumscribed by this Motion.

9. Veeco may or may not hold a warehouseman's lien on the Cargo pursuant to the Three Parties Agreement on Warehousing. Debtor's counsel has recently learned that Veeco[2] did not actually provide the warehouse space for the Cargo, but rather acted only as a facilitator for such warehouse space on behalf of CLG. The Debtor is not in direct contract with CLG, which was identified in Schedule G of Executory Contracts. The Debtor believes it may sell free and clear of Veeco and CLG's respective liens and interests, if any, with those respective liens and interests attaching to the proceeds, pursuant to 11 U.S.C. §363(f)(4). In addition, the Cargo is expected to generate proceeds in excess of any amounts owed to Veeco and CLG, thereby satisfying the requirements for a sale free and clear of 11 U.S.C. §363(f)(3).

///

///

---

[2] Veeco received notice of the general claims bar date in this bankruptcy case as reflected in Docket #12, the certificate of notice of the Bankruptcy Noticing Center, however Veeco has not filed a proof of claim. CLG as added to when the Debtor subsequently filed its Schedule G of Executory Contracts and Lease, however CLG did not receive notice of the general claims bar date.

10. Veeco and CLG also could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such liens or interests. Specifically, a plan could be confirmed without the consent of such creditors under Bankruptcy Code section 1129(b)(2)(A) with their liens remaining on restricted proceeds. The Debtor, absent consent from NC State Renewables, Veeco and CLG, alternatively seeks approval of this Motion pursuant to 11 U.S.C. §363(f)(5).

WHEREFORE, the Debtor respectfully requests that the Court (1) grant this Motion, (2) approve the sale of the Cargo by auction to be conducted by Heritage, free and clear of all interests, liens, claims and encumbrances, (3) transfer any liens and/or interests of NC State Renewables, CapDyn, Veeco and CLG to the net proceeds of the auction after payment of the costs of sale and commission to Heritage, in the same order that said liens and/or interests existed pre-petition, (4) authorize the Debtor to hold the net sale proceeds for NC State Rewnewables, CapDyn, Veeco and CLG pending their establishment of interests and liens on the Cargo and release said proceeds upon satisfactory proof of secured status; and, (5) for such other and further relief as the Court deems just and proper.

Dated: April 20, 2018  BINDER & MALTER, LLP

By: /s/ *Robert G. Harris*
     Robert G. Harris

Attorneys for debtor and debtor-in-possession
ET Solar, Inc.